690 A.2d 503

Emery HERTELENDY et al.

v.

BOARD OF EDUCATION OF TALBOT COUNTY et al.

No. 16, Sept. Term, 1995.

Court of Appeals of Maryland.

May 9, 1995.

Subsequent Opinion March 4, 1997.

John R. Greiber, Jr. (Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for Petitioners.

Edward J. Gutman (Edmund J. O'Malley, Blum Yumkas, Mailman, Gutman & Denick, P.A., on brief), Baltimore, Steven J. Routh, argued (Steven P. Hollman, Stacy L. Ehrlich, Hogan & Hartson, L.L.P., Bethesda and Washington, DC; John H. Murray, Richard A. DeTar, Miles & Stockbridge, on brief, Easton; Christopher Burlee Kehoe, Karen R. Reisinger, Ewing, Dietz, Turner & Kehoe, P.A., on brief, Easton), for respondents.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, ROSALYN B. BELL, and RAKER, JJ.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this 9th day of May, 1995,

ORDERED, by the Court of Appeals of Maryland, a majority of the court concurring, that the judgment of the Circuit curt for Talbot County be, and it is hereby, affirmed with costs; mandate to issue forthwith.

PER CURIAM.

The controversy in this case concerned the validity of the property tax limitation provision in Article VI, § 614, of the

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

Talbot County Charter. The Circuit Court for Talbot County on March 22, 1995, filed a declaratory judgment, declaring that Article VI, § 614, "abrogate[d] the power of the Talbot County Council to set the property tax rate in that jurisdiction ... and is therefore unconstitutional and invalid." On May 9, 1995, after briefing and oral argument, this Court issued an order affirming the judgment of the Circuit Court for Talbot County. This opinion sets forth the reasons for that affirmance.

At the general election in November 1978, Talbot County residents voted to amend Article VI, § 614, of the Talbot County Charter, entitled "Tax Levy and Balanced Budget." Prior to this amendment, Article VI, § 614, read as follows:

> "When the County budget is finally established by the Annual Budget and Appropriation Ordinance, the Council thereupon shall levy and cause to be raised the amount of taxes required by the current expense budget and the current portion of the capital budget in the manner provided by law so that the budget is balanced as to proposed income and expenditures."

The amended version of Article VI, § 614, went into effect in December 1978. The amended charter section included the above paragraph with two minor changes.[1] In addition, the following two paragraphs were added to § 614 by the 1978 amendment:

> "Notwithstanding any other provisions of this Article, the Council may not establish property tax rates which would provide more property tax revenues than were raised during the 1978–79 tax year, unless such additional revenues are the result of assessments on newly constructed property or other property not previously assessed. The constant yield tax rate shall be as currently specified by Article 81 of

---

1. One of the changes to the initial paragraph of § 614 is that "County" now reads "county." The other change is the inverted word order of "thereupon shall," which now reads "shall thereupon."

the Annotated Code of Maryland.[2] Should the foregoing method of calculating the constant yield tax rate expire, the rate will be calculated at the county level using the same procedures now provided by said Article 81. However, should Article 81 of the Annotated Code of Maryland be amended, reenacted or otherwise changed to provide a different method for calculation of the constant yield tax rate, this new method shall be followed.

"The provisions of Article 81 of the Annotated Code of Maryland which permit local taxing authorities to increase property tax rates above the constant yield tax rate shall not be employed by the Talbot County Council."

Thus, § 614, as amended, effectively limited the amount of property tax that could be collected to the amount that had been collected in the fiscal year 1978–1979, not including newly constructed property or other property not previously assessed. Therefore, any increase in property tax revenue above the amount collected in the 1978–1979 tax year must be derived from newly constructed property or other property not previously assessed.

According to a stipulation by the parties to this case, the practical effect of this property tax limitation was that, "[a]s the assessed value of property in Talbot County has increased since 1978, the property tax rate necessarily has decreased, in order to comply with the requirement of [Article VI, § 614 of the Talbot County Charter]." The parties further stipulated that, at $.65, Talbot County has the lowest property tax rate in Maryland, the next lowest property tax rate in Maryland being Worcester County's at $1.68, and the highest being Baltimore City's at $5.85.

In an attempt to remedy the effects of the property tax limitation, on January 31, 1995, more than sixteen years after

---

**2.** Article VI, § 614, of the Talbot County Charter refers to the constant yield procedures in Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 232C. This provision was subsequently recodified as Code (1986, 1994 Repl.Vol., 1996 Cum.Supp.), §§ 2–205 and 6–308 of the Tax–Property Article.

the amended § 614 went into effect, several organizations and individuals filed in the Circuit Court for Talbot County a complaint for declaratory and injunctive relief against Talbot County.[3] The plaintiffs sought a declaration that Article VI, § 614, of the Talbot County Charter was invalid and should be given no effect because it "so restricts the constitutionally mandated discretion of the [Talbot County] Council that it violates the Constitution and Public General Laws of Maryland." More specifically, the plaintiffs asserted that § 614 prevented the governing body of Talbot County from setting the property tax rate as required by law and thus conflicted with Article XI–A, § 3, of the Maryland Constitution, and Maryland Code (1986, 1994 Repl.Vol.), §§ 6–302(a) and 6–308 of the Tax–Property Article.

Several individual Talbot County residents moved to intervene as additional defendants.[4] The Circuit Court for Talbot County granted the motion to intervene, and the intervenors filed an answer to the complaint. Thereafter, both sides filed motions for summary judgment along with a joint stipulation of facts.

In a thorough and well-reasoned opinion filed on March 22, 1995, the Circuit Court for Talbot County (Sause, J.) concluded that Article VI, § 614, of the Talbot County Charter, as amended in 1978, abrogated the authority of the Talbot County Council to set the property tax rate in that jurisdiction, was "irreconcilably inconsistent with the Public General Laws of Maryland and is therefore unconstitutional and invalid." The net effect of this charter provision, wrote the circuit court, was

---

**3.** These organizations and individuals were the Talbot County Board of Education, the Talbot County Council of PTAs, the Talbot County Chamber of Commerce, Inc., the League of Women Voters of Talbot County, Inc., the Talbot County Branch of the National Association for the Advancement of Colored People, Peggy M. Rider, Harold Baines, Marla Baines, Lorraine B. Claggett, Royce L. Sampson, Leonard Lash, William F. Best, Richard W. Barber, and Sharon L. Barber.

**4.** The intervenors included Michael J. Feehley, James B. Walker, Gail C. Walker, Harold M. Jump, Carter N. Jump, Jr., T. Coleman, Susan H. Dupont and Emory Hertelendy.

that "[a]s of the moment when the amendment was adopted, the rate became fixed at the statutory level for the fullness of time, or at least until the voters agree to relinquish all or part of it." Because the circuit court determined that the County Council lacked all discretion in the matter of setting the property tax rates for Talbot County, the circuit court granted the plaintiffs' motions for summary judgment and issued a declaratory judgment that § 614 was invalid.

The individual defendants appealed to the Court of Special Appeals. Before any proceedings in that court, however, the defendants filed in this Court a petition for a writ of certiorari which we granted. Before this Court, the plaintiffs maintained that, in light of the principles set forth in *Board v. Smallwood,* 327 Md. 220, 608 A.2d 1222 (1992), the property tax limitation contained within § 614 of the Talbot County Charter so divested the County Council of its statutory discretion to set the property tax rate that it violated Code (1986, 1994 Repl.Vol.), § 6–302 of the Tax–Property Article, as well as Article XI–A of the Maryland Constitution. The defendants argued that § 614 constituted valid charter material because the electorate possesses coordinate legislative power. They further asserted that, because the County Council could set the property tax at a rate lower than the "reasonable" and "non-detailed" constant yield tax rate, § 614 left some discretion with the County Council and was, therefore, valid under the principles discussed in *Board v. Smallwood, supra.*

As previously indicated, on May 9, 1995, this Court issued an order affirming the circuit court's judgment which had declared invalid the property tax limitation provision in Article VI, § 614, of the Talbot County Charter.

In *Board v. Smallwood, supra,* 327 Md. 220, 608 A.2d 1222, we considered the validity of proposed charter amendments that attempted to limit property taxes in Anne Arundel and Baltimore Counties. The charter amendments in *Smallwood* proposed to limit property taxes using both "percentage tax cap" and "roll back" provisions. The percentage tax cap provisions authorized the county councils to increase property

tax revenues for the next tax year by no more than 2% in Baltimore County and by no more than 4.5% in Anne Arundel County. The charter amendments also contained roll back provisions, which attempted to limit the amount of property tax revenues for the 1991–1992 tax year to no more than the amount collected in the base tax year of 1989–1990 for Baltimore County, and no more than the amount collected in the base tax year of 1988–1989 for Anne Arundel County.

In *Smallwood,* the Court took the position that, under Article XI–A of the Constitution, property tax limitations could be proper charter material in home rule counties such as Anne Arundel and Baltimore Counties. We held, *inter alia,* that "a limitation on the power of a legislative body to raise revenue is at the heart of the form and structure of our government and thus is proper charter material." *Board v. Smallwood, supra,* 327 Md. at 238, 608 A.2d at 1231.

We also held in *Smallwood* that the proposed Anne Arundel County and Baltimore County charter provisions did not conflict with the requirement in § 6–302(a) of the Tax–Property Article that the county governing bodies annually set the property tax rate because the county councils in each county could still exercise reasonable legislative discretion. The Court thus stated (327 Md. at 242–243, 608 A.2d at 1233):

> "The proposed [percentage tax caps] would not have had the [prohibited] effect of allowing the electorate of the two counties to [legislatively] set the tax rates. As required by § 6–302(a), the legislative body in each county would continue to set the tax rate on property. There is no language in the statute indicating that reasonable limits cannot be placed on the legislative power to set the tax rate."

The proposed tax limitations in *Smallwood* would also have limited somewhat the power of the county councils to raise the tax rate above the constant yield. It was argued that this type of limitation conflicted with § 6–308 of the Tax–Property Article which requires that certain procedures be followed if "a taxing authority intends to set a county . . . property tax rate that exceeds the constant yield tax rate. . . ." We reject-

ed this argument, explaining that there was no conflict between the proposed charter amendments and § 6–308 because § 6–308 is a "procedural provision limiting a county's authority, rather than an affirmative grant of power." *Board v. Smallwood, supra,* 327 Md. at 243, 608 A.2d at 1233.

In *Smallwood* this Court did, however, invalidate the "roll back" provisions in the Baltimore County and Anne Arundel County proposed charter amendments. These roll back provisions attempted to limit the amount of property tax revenues for the 1991–1992 tax year to no more than the amount collected in the base tax year of 1989–1990 for Baltimore County, and no more than the amount collected in the base tax year of 1988–1989 for Anne Arundel County. We noted that, unlike the percentage tax cap provisions, which simply placed a percentage limit on the authority of the county councils to increase property taxes, the roll back provisions would have "transferred the county councils' § 6–302(a) powers to the voters" and allowed the "voters of [the two counties] to set the property tax rates for the tax year 1991–1992." *Smallwood,* 327 Md. at 244, 608 A.2d at 1234.

The teaching of *Smallwood* is that, although property tax limitations may be valid charter material when they "would have simply placed a limit on the taxing power of [a] county council," § 6–302(a) of the Tax–Property Article prohibits charter provisions that "would have transferred the county councils' § 6–302(a) powers to the voters" and "would have allowed the voters . . . to set the property tax rates for the tax year. . . ." *Smallwood,* 327 Md. at 244, 608 A.2d at 1234. In light of *Smallwood,* the circuit court was clearly correct in declaring invalid the 1978 amendment to Article VI, § 614, of the Talbot County Charter.

Talbot County is a charter county subject to Article XI–A of the Maryland Constitution. The legislative body for Talbot County is the Talbot County Council. As such, the Talbot County Council has the power to "impose property tax on the assessment of property that is subject to [Talbot County's] property tax." § 6–202 of the Tax–Property Article. The

County Council is also authorized to assess, levy, and collect taxes "as may be necessary for the support and maintenance of the county government." Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(O). Moreover, the County Council, along with the County Executive, must *"annually* . . . set the tax rate for the next taxable year on all assessments of property subject to [Talbot County's] property tax." § 6–302(a) of the Tax-Property Article (emphasis added).

As mentioned previously, the effect of Article VI, § 614, of the Talbot County Charter was that, except for newly constructed and newly assessed property, for several years, the Talbot County Council has been prohibited from raising more property tax revenues than were raised in 1978–1979. Furthermore, § 614 freezes the tax rate at the constant yield tax rate as provided for in § 2–205 of the Tax–Property Article. As Judge Sause pointed out in the court below, "the County Council was locked into the rate set by the voters, *i.e.* the . . . rate for the tax year 1978–1979." Judge Sause's opinion continued as follows:

"Indeed, the Talbot County property tax limitation is unlike those as originally proposed or amended in *Smallwood* in that it contains no provision for any change whatsoever. Thus, the voters do not usurp the power to fix the rate for a mere one year or in one referendum. As of the moment when the amendment was adopted, the rate became fixed at the statutory level for the fullness of time, or at least until the voters agree to relinquish all or part of it.

"Also clear from a reading of *Smallwood* is the fact that the Court viewed a 'tax cap' as involving not merely a limitation, but a limitation in which some portion of the council's power was retained. That is to say, the provisions of the Anne Arundel and Baltimore County proposals which permitted a limited increase in the rate provided in the 'base year' as part and parcel of a 'tax cap.' In describing those proposals, Judge Eldridge, for the Court, expressly stated that 'The proposed Property Tax Limitation charter amendments . . . would have placed a *percentage* cap on the

amount of local property tax revenues to be raised each year [emphasis supplied]' (327 Md. at 236, 608 A.2d 1222).

"Elsewhere, because of that small window of discretion (4.5% in Anne Arundel County, and 2% in Baltimore County), the Court found that 'These proposed tax limitation amendments were not back-door attempts by the voters . . . to enact detailed legislation. Nor did they divest the county councils of the ability to set the property tax rates' (327 Md. at 240, 608 A.2d 1222). Here, the tax cap was 'detailed' to the point of excluding all other possibility; and the Council's ability was completely divested.

"Beyond any doubt, the Court of Appeals viewed the tax caps which it considered as being limitations upon the authority of Anne Arundel and Baltimore Counties to a prescribed range. By definition, the ability to establish the property tax rate within a prescribed range is an ability to set the property tax rate, albeit a limited ability. By definition, the absence of any choice is the ability to do nothing. As the Board of Education succinctly notes, 'in the one case, the voters do not . . . set tax rates, but only . . . limit them, while in the other case, the voters in effect set the tax rate legislatively, by decreeing for the indefinite future that revenues shall not exceed levels in an arbitrary base year.'

"Under *Smallwood*, a 'tax cap' is valid only so long as it confers some authority upon a county council to carry out its mandated duty under § 6–302(a) of the Tax–Property Article to 'annually . . . set the tax rate for the next taxable year on all assessments of property subject to that county's property tax.' Under Article VI, § 614, of the Talbot County Charter, the County Council has no such authority."

Judge Sause correctly applied the principles of *Smallwood* to the circumstances of this case. For this reason, we affirmed the judgment of the circuit court.